**In re CALIFORNIA PROPERTIES NO. 1, LTD., Debtor.**

**Bankruptcy No. 90–03759–APG.**

United States Bankruptcy Court, M.D. Alabama.

June 11, 1991.

Richard A. Lawrence, Montgomery, Ala., for debtor.

C.C. Torbert, Jr., Montgomery, Ala., Luther M. Dorr, Jr., Birmingham, Ala., for creditor.

## OPINION

A. POPE GORDON, Bankruptcy Judge.

Creditor Thomas E. Gray filed a proof of claim in this case for the balance due on a note. The note is secured by first mortgages on the Coronado Apartments and the Monterey Apartments located in Montgomery, Alabama.

The debtor filed an objection to that portion of the claim seeking allowance of attorneys' fees and expenses in the amounts of $24,073 and $1,528.51, respectively.[1]

The objection came on for hearing on June 4, 1991.

The facts are not substantially in dispute. Gray commenced a judicial foreclosure proceeding after the debtor defaulted on the two mortgages. The debtor interrupted the foreclosure proceeding by filing the chapter 11 petition on October 10, 1990.

1. Gray's attorneys filed a detailed statement showing services rendered and time expended in connection with the foreclosure proceedings and this chapter 11 case.

2. The parties agree that the value of the apartment houses exceeds the amount of the claim. Additionally, both parties have cited the following provision of the mortgage on each apartment complex—

[I]f this mortgage be foreclosed in Chancery or under the power of sale hereinafter provided for, or if an action be brought for breach of any obligation hereunder, the Mortgagor will pay, when the same becomes due, such attorney's fee as may be reasonable for such services ...

The debtor suggests reduction of the requested hourly rate to $125, reduction of work hours to 83.5, plus $1,200 for law clerk time, to arrive at the lodestar amount, and reduction of the lode-

Section 506(b) of the Bankruptcy Code provides:

To the extent that an allowed secured claim is secured by property the value of which ... is greater than the amount of such claim, there shall be allowed to the holder of such claim ... any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

This section qualifies a secured creditor's right to fees by the following three factors: (1) the creditor must be oversecured; (2) the agreement upon which the creditor's secured claim is based must provide for the recovery of the fees; and (3) the fees must be reasonable.

The debtor challenges only the reasonableness of the fees and expenses claimed.[2]

■ First, the debtor contends that the hourly rates charged are excessive. These rates include up to $225 per hour for one attorney and up to $140 for the other.[3] The debtor maintains that the prevailing market rate for legal services such as these is $125 per hour.

The law firm's billing statement reveals that the average charge per hour is $128.73, which the court concludes is not unreasonable.

Second, the debtor contends that some of the hours billed are redundant because of duplication of services.[4]

star amount by 15%, which results in a fee of $9,891.87.

3. The senior lawyer charged $195 per hour for services performed in 1990 and $225 for services performed in 1991. The junior partner charged $125 and $140 per hour for services performed in 1990 and 1991, respectively. Law clerk's services are billed at $55 per hour.

4. The debtor relies on *Norman v. Housing Authority of the City of Montgomery*, 836 F.2d 1292, 1301–02 (11th Cir.1988) in which the court states:

Redundant hours generally occur where more than one attorney represents a client. There is nothing inherently unreasonable about a client having multiple attorneys, and they may all be compensated if they are not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer.

The billing statement reflects that the junior partner chiefly drafted pleadings and did legal research, while the senior partner conferred with the client, negotiated with opposing attorneys, and reviewed pleadings drafted by the junior attorney. It does not appear that the two attorneys' were doing the same work.

■ Third, the debtor contends that the time requested for intra-office conferences is unnecessary.[5]

However, some conference time is necessary for attorneys to coordinate activities, exchange ideas, evaluate strategies, pool skills, and review each others' efforts. *See In re Mayes,* 101 B.R. 494 (Bankr. W.D.Mich.1988).

■ Fourth, the debtor contends that the hours expended by the attorneys in connection with the prepetition lawsuit brought by the second mortgagee were unnecessary.[6] In that action Gray asserted a counterclaim to foreclose the first mortgages judicially.

Judicial foreclosure is plainly within the scope of the attorneys' fee agreement as set forth in the mortgages.

■ Fifth, the debtor contends that the postpetition time spent opposing the debtor's chapter 11 plan was unnecessary because the creditor was oversecured and "protected from the very beginning."

Even though a creditor's secured status may not be in jeopardy, the risk of ability to collect the debt is sufficient to justify reasonable legal expense in a chapter 11 case.

■ Sixth, the debtor objects to reimbursement of the expenses requested. These include copy charges, meals, mileage, filing fees, and computer research, as well as travel time for five round-trips from Birmingham to Montgomery.

These charges are not within the scope of the mortgage agreement noted in footnote 2, *supra,* which provides for payment only of "such attorney's *fee* as may be reasonable (emphasis added)." All expenses requested will be disallowed.[7] In addition, travel time of three hours for each round-trip will be deducted from the fee.[8]

■ Finally, the debtor argues in brief that the lodestar amount should be reduced. The argument has merit. The amount claimed is disproportionate to the results obtained.[9]

Courts have found fees to be unreasonable when they result in little benefit to the secured creditor, especially when, as here, a large equity exists and there is little threat to the creditor's interest.[10]

Especially questionable is the $10,461.50 charge for postpetition work which constitutes 43% of the total bill. The parties reached an agreement regarding adequate protection within one month after the bank-

---

5. Some 50 entries on the billing statement, representing 57 of the 187 hours billed, contained references to telephone or office conferences. However, these entries, with few exceptions, show that the conferences took place in connection with other work then in progress.

6. Gray was joined as an indispensable party in the action to foreclose the second mortgage.

7. In addition, the expenses are not itemized in sufficient detail to substantiate the reasonableness of the expenditures. 11 U.S.C. § 506(b).

8. The attorneys maintain offices both in Birmingham and Montgomery. Travel between these offices ordinarily constitutes non-reimbursable overhead. In addition, local counsel able to render the services in question was readily available, thus obviating the necessity of travel.

9. The court in *Norman,* 836 F.2d at 1302, states:

After the lodestar is determined by multiplication of a reasonable hourly rate times hours reasonably expended, the court must next consider the necessity of an adjustment for results obtained.... In doing so, the court may attempt to identify specific hours spent in unsuccessful claims or it may simply reduce the award by some proportion.

10. The creditor was not benefited proportionately with the hours invested in the action to foreclose the second mortgage and later in the bankruptcy case. The creditor's first mortgage position was not in jeopardy in the action to foreclose the second mortgage. The creditor was

ruptcy case was filed.[11] The attorneys filed no motion to terminate the 11 U.S.C. § 362(a) stay during the pendency of the case and raised only token opposition to confirmation of the chapter 11 plan.[12]

The court concludes that the creditor will receive the benefit of his bargain with respect to the attorneys' fee if the lodestar amount is reduced by 15%. A fee of $18,-820.74 [13] will be allowed as part of the secured claim of Gray.[14]

An appropriate order will enter separately.

protected by the equity cushion during the pendency of the bankruptcy case.

11. The court approved the agreement which provided for payment of the regular monthly mortgage payments pending confirmation of the plan.

12. The plan as initially proposed provided for full payment of the mortgages upon sale of the properties and for regular interim mortgage payments.

13. The amount of the fee was computed by deducting the disallowed travel time and reducing the result by 15%, as follows: $24,073 − (15 hours × $128.73 (the average hourly rate)) × 85% = $18,820.74).

14. As noted in a leading bankruptcy treatise, [S]ection 506(b) provides only for the *allowance* of postpetition interest, fees, costs and charges as part of a secured claim. It does not require the current *payment* of such amounts. Entitlement to current payment of such amounts must be grounded elsewhere, such as in the provision of . . . any underlying agreements which are not affected by the subject bankruptcy case (footnotes omitted). 3 *Collier on Bankruptcy* ¶ 506.05, p. 506–43 (5th ed. 1990).